## LIABILITY FOR ACCIDENT DUE TO BAD CONDITION OF COUNTRY ROAD.

Common Pleas Court of Hamilton County.

JAMES W. DURRELL, ADMINISTRATOR, v. THE OHIO TRACTION COMPANY ET AL.

Decided, March 19, 1908.

*County Commissioners—Negligence of, in Keeping Roads in Repair— Action Against for such Failure does not Lie, When—Application of Section 845 as Amended—Punctuation—Pleading.*

1. Inasmuch as Section 845 is in derogation of the common law and should be strictly construed, a petition filed under this section and asking for damages against county commissioners, because of an accident growing out of the unsafe condition of a public highway, should clearly allege that the said highway is a state or county road.

2. Moreover, liability for such an accident can attach to a county only when it is made to appear that the county commissioners had been negligent with reference to repairs which it was their duty under the law to make, and that such negligence was the cause of the accident for which damages are sought.

BROMWELL, J.

Heard on demurrer to petition.

This is an action brought by the administrator of Lawrence Connor against the Ohio Traction Company and the board of county commissioners of Hamilton county for injuries and subsequent death of said Connor by reason of alleged negligence on the part of defendants in not keeping a certain road designated as the Cincinnati, Springfield & Carthage turnpike in proper repair, and to this petition a demurrer has been filed on behalf of the county commissioners for the reason that said petition contains a misjoinder of parties defendant.    In argument it is claimed by the county solicitor that the county commissioners are not liable for any negligence on their part in failing to maintain and keep in repair such roads as that described in the petition.

The petition, among other things, alleges that said Cincinnati, Springfield & Carthage Pike is a *public highway* * * * and is under the care, maintenance and control of the said board of county commissioners;   * * *   that at all times the defendants had the care, management and control of said turnpike and the tracks of said traction line, and it was the duty of said defendants and each of them to keep the road-bed of said turnpike in good repair, convenient and safe for public travel; that the rails of said traction line were laid in and upon the road-bed of said turnpike and were a part and it was the duty of said defendants and each of them to keep and maintain said tracks on a level with the road-bed of said turnpike so that the same could be crossed back and forth with convenience and safety by vehicles of all description; * * * that for many months prior to the date of the alleged accident and on that day the road-bed of said turnpike at the place where the accident occurred had been washed by rains and worn by travel, until

the bed or level of said turnpike was six inches lower than the top of the rails, thereby rendering said turnpike unfit and dangerous to cross and recross; * * * that in spite of the fact that the defendants had notice of the condition of said road-. bed and tracks they failed, neglected and refused to repair and keep and maintain said road-bed and the tracks of said traction line in a condition safe for public travel, and carelessly and negligently permitted said road-bed to be washed away and worn by travel and remain in the dangerous condition referred to.

It then sets out the manner in which the accident occurred to plaintiff's intestate, who was riding on the rear step of an ice delivery wagon which was being driven on said turnpike; that in attempting to cross over the rails of said traction line the wheel of the wagon was caught by the rails and one of them was broken off, and as a result the wagon fell upon the decedent, causing injuries which resulted in his death.

A similar demurrer to that filed by the county commissioners has also been filed on behalf of the Ohio Traction Company.

The traction company made no argument upon the demurrer filed by it, but the county solicitor, in support of the demurrer of the county commissioners, takes the position that roads of the kind referred to in the petition are not under such control of the county commissioners as to render such commissioners liable for injuries growing out of their negligence in failing to keep said roads in repair, and adopting the reasoning of the lower courts in the case of *Smith* v. *County Commissioners*, 10 C. C. —N. S., 115, further claims that said commissioners have no statutory duty to keep such roads in repair.

Prior to the amendment of Section 845 (91 O. L., 142), there was no right of action against a county or its commissioners for damages sustained by the failure to keep a road or bridge in repair, the wording of the statute at that time being:

"The board of commissioners shall be capable of suing and being sued, pleading and being impleaded in any court of judicature and to ask, demand and receive, by suit or otherwise, any real estate or interest therein, whether the same is legal or equitable, belonging to their county or any sum or sums of money or other property due to such county."

The amendment referred to introduced immediately after the word "judicature" above the following:

"And of bringing, maintaining and defending all suits, either in law or in equity, involving an injury to any public, state or county road, bridge or ditch, drain or water-course established by such board in their · county, and for the prevention of injury to the same; *and any such board of county commissioners shall be liable in their official capacity for any damages received by reason of the negligence or carelessness of said commissioners in keeping any such road or bridge in proper repair.*"

Reference to this amendment as found in 91 O. L., 142, will show no punctuation between the word "public" and the word "state" on the fifth line, while the statute as printed in the last edition of Bates shows a comma between those two words. If the former absence of punctuation is correct, the section would seem to be limited to state or county roads, etc., · while, if the punctuation as found in the Revised Statutes is adopted, it might give a broader meaning to the word "public" than if it is merely used to qualify the words which follow, and making it a class by itself.

The courts, so far as they have considered this section, seem to regard the language as intended to apply only to the two classes of roads, state and county.

As Section 845 creates a new statutory right of. action not authorized at common law it should ,like all other statutes in derogation of the common law, be construed strictly. Applying this rule of strict construction the petition in this case should have clearly alleged that the road upon which the accident occurred was a state or county road. It is not sufficient to designate it as a public highway, or as a turnpike, for city streets are public highways, and it will not be contended that the county commissioners would be responsible for keeping them in repair, or be liable for accidents growing out of their unsafe condition; and turnpikes are not necessarily state or county roads, and in many instances are not especially where tolls are collected on said turnpike.

The allegation that said pike is under the care, maintenance

and control of the board of county commissioners does not sufficiently state that it comes within either of the classes of roads referred to in this section.

But even if the language of the petition would justify the assumption that said turnpike was a county road, we would feel ourselves bound by the decision of the Supreme Court in the case referred to above (*Smith* v. *County Commissioners*), affirmed without report February 27, 1906 (74 O. S., 434), a full discussion of which is found in 10 C. C.—N. S., page 115.

There seems to be an error in the first line of the syllabus in the use of the word "country" instead of "county." The syllabus reads:

"The duty of keeping ordinary country roads in repair is not imposed on county commissioners by Section 845, Revised Statutes; and a directed verdict for the defendants is not erroneous in an action for damages for negligence brought by one injured by his vehicle sliding into a deep rut or hole in the road."

An examination of the language of the decision shows that the word "country" in the syllabus above should be "county," as the court, on page 117, uses this language in reference to the road involved in that case:

"That this was a county road seems to be admitted, but it is urged that no duty is imposed upon the county commissioners by any statute, of making such repairs, as seems to have been necessary here under the circumstances of this case."

The court then goes on to say on the same page, referring to the commissioners:

"It is their duty in some cases to repair roads as, for instance, where, by freshet or inundation, the road has been partly or wholly swept away so as to render it impassable; there it is the duty of the commissioners to repair the road. *That is not claimed to be the case here but it is claimed that this condition existed in the road for several months as alleged in the petition.*

"Now we have examined as far as we know all the statutes bearing upon this question and we have been unable to find any statute expressly imposing this duty upon the county

commissioners in a case of this kind. I will not undertake to review all the statutes bearing on roads and bridges, as they are numerous and it would be impossible to review them in this opinion, but it will be observed that this statute only makes the county liable for the *negligence* of the commissioners. It does not, as in some of the bridge statutes, make the county liable for damages in case of failure to repair and keep in repair bridges as expressed in some of the bridge statutes. Negligence is the failure to use ordinary care. It is the failure to perform a duty imposed upon one either by statute or by common law * * * and in order to make the county commissioners liable for defects in county roads under this statute it must be shown that they were negligent in some respects.''

On page 119:

''This statute should receive a reasonably strict construction, for to impose upon the county the liability for a defect in any road would impose a tremendous liability, regardless of the fact as to whether or not the board of county commissioners are actually negligent or not. * * *

''Whether the doctrine of constructive notice would prevail or not we are uncertain; that is, to hold the county liable on the ground that it had been out of repair for some time. There is no claim in this case that there was any actual notice to the commissioners of the condition of this road.''

Through the courtesy of the county solicitor we have been furnished copies of the printed record and briefs of the counsel in the case from which we have last cited, and while in that case the court refused the motion to dismiss before the taking of evidence, and decided the case upon a motion after the evidence was in, the reasoning of the court would seem to warrant us in disposing of the question on the motion now pending.

We therefore sustain the demurrer of the county commissioners.